## BANK *against* IRVINE.

A endorsed B's note payable in sixty days, which was intended should be presented to a bank for discount; and at the same time he also endorsed another note in blank, and without date, with which it was designed the first note should be renewed when it fell due. The first note was discounted by the bank, and when it became due, was not renewed, and was not protested. Twenty-two months afterwards, the blank note was procured from the drawer by the cashier of the bank, who dated it and laid it before the directors to be discounted, in renewal of the first note: it was discounted, and when it became due, was protested for non-payment; of which regular notice was given to the drawer. *Held*, that if the cashier, as the agent of the bank, procured the second note by improper means from the drawer, and contrary to the original design of the endorser, when he put it into the possession of the drawer, the bank could not recover in an action against the endorser.

ERROR to the Common Pleas of *Cumberland* county.

This was an action by the *Lancaster Bank* against *Matthew Irvine* endorser of a note discounted by the bank.

On the 24th December, 1821, *James Duffy* drew his note for five hundred dollars payable to the order of *Matthew Irvine*, sixty days after date, at the *Lancaster Bank;* the note was endorsed by *Matthew Irvine*. At the same time he endorsed a blank note in order to enable the drawer to renew the first note when it would become due, and delivered it to the drawer: the first note was discounted by the bank, and when it become due, was not renewed, and was not protested, but laid over until the 24th November, 1823, when the cashier of the bank called upon *Duffy*, the drawer; and, as was alleged and proved, procured by improper means from him, the blank note which *Irvine* had endorsed, dated it and laid it before the directors of the bank, to be discounted in renewal of the first note: it was also for five hundred dollars. This note was discounted; and when it became due, was protested for non-payment, of which notice was given to *Irvine* the endorser. It did not appear by evidence that the interest which occurred upon the first note, from the time it became due, until the date of the second note, had been paid by any one. This action was brought against *Irvine* upon his endorsement of the second note. Several points were put to the court by the defendant's counsel which were answered to the jury. The only one which it is necessary to state here, is this answer to the first point: "If the note in question was procured by improper means, by the *cashier*, as the agent of the bank, from *James Duffy;* and contrary to the original design of the endorser, when he put it into the possession of the drawer, it would be a bar to the plaintiff's recovery." The jury found a verdict for the defendant, upon which judgment was rendered; to reverse which, this writ of error was sued out; and the opinion of the court as above stated was assigned for error and was argued by

(Bank *v.* Irvine.)

*Carothers,* for plaintiff in error.  Who contended,  that inas-' much as  the endorser had put his endorsement into  the possession of  the drawer without date, and which might be used at any time, he would be liable at any time when it should be used.     That no fraud of  a third person, in  procuring  the  note from  the  drawer would change this liability; and *quoad hoc* the cashier was a third person; though he was an agent of the bank, it was for other specific purposes.    That if the fraud was not on the part of the bank  the plaintiff was entitled to recover.

*F. Watts* and *Penrose,* for defendant in error, were stopped by the court.

Judgment affirmed.